# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

LISA M. WHISTLER, )
)
Plaintiff, )
)
v. ) Case No. CIV-16-348-SPS
)
NANCY A. BERRYHILL, )
Acting Commissioner of the Social )
Security Administration,[1] )
)
Defendant. )

## OPINION AND ORDER

The claimant Lisa M. Whistler requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on June 3, 1981, and was thirty-four years old at the time of the most recent administrative hearing (Tr. 108). She has a high school education and vocational training in nursing, business technology, and administration assistance, and has worked as a cashier, retail manager, and apartment lessor (Tr. 129, 753).[3] The claimant alleges she has been unable to work since August 26, 2009, due mental conditions, chronic pain, diabetes, and diabetic neuropathy (Tr. 128-29).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on November 18, 2010 (Tr. 108-11). Her application was denied. ALJ Bernard Porter conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated March 29, 2013 (Tr. 10-21). The Appeals Council denied review, but this Court reversed the decision of the Commissioner in Case No. CIV-13-388, and remanded the case for further consideration of the claimant's mental impairments (Tr. 598, 702). ALJ Donald Davis

---

[3] The vocational expert submitted an opinion on July 23, 2015, identifying the claimant's past relevant work as a cashier, retail manager, and apartment leasing. In his written opinion, the ALJ incorrectly identified the retail manager job as a paint manager, but used the correct DOT number for the retail manager job.

-3-

conducted a second administrative hearing and determined the claimant was not disabled in a written opinion dated September 11, 2015 (Tr. 598-615). The Appeals Council denied review, so the ALJ's September 2015 written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found the claimant retained the residual functional capacity ("RFC") to perform less than the full range of medium work, *i. e.*, she could lift fifty pounds occasionally and twenty-five pounds frequently, and could stand, walk, and sit six hours in an eight-hour workday. Additionally, the ALJ determined that the claimant could perform simple tasks, adapt to a work environment, work for two-hour intervals, have superficial interpersonal contact to work performed, have routine supervision which was simple, direct, and concrete, but could not have contact with the general public, or engage in fast-paced assembly line work (Tr. 607). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work in the national economy that she could perform, *i. e.*, hand packer (Tr. 613-14).

## Review

The claimant contends that the ALJ erred by: (i) ignoring probative evidence related to her mental impairments, (ii) failing to conduct a longitudinal assessment of the functional limitations of her mental impairments, (iii) failing to properly analyze the state reviewing physician opinion regarding her mental RFC, and (iv) relying on vocational expert ("VE") testimony that was not inclusive of all of her impairments. The Court

agrees with the claimant's third and fourth contentions, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found that the claimant had the severe impairments of diabetes mellitus, gastritis, hernia, reflux esophagitis, obesity, gall bladder issues, history of cancer, an affective disorder, an anxiety disorder, posttraumatic stress disorder, history of cannabis dependence and alcohol use (DAA), borderline intellectual functioning, and impulse control disorder (Tr. 600). The relevant medical evidence related to the claimant's mental impairments reveals that providers at the Mental Health and Substance Abuse Centers of Oklahoma treated the claimant for bipolar disorder, depression, anxiety, and posttraumatic stress disorder from December 2008 through April 2009 (Tr. 227-50). Beginning in September 2010, and continuing through May 2015, providers at Carl Albert Community Mental Health Center also treated the claimant for bipolar disorder, depression, anxiety, and posttraumatic stress disorder (Tr. 528-33, 561-83, 755-89).

On January 4, 2010, Randy Crittenden, Ph.D., conducted a consultative mental status examination (Tr. 399-405). He noted the claimant's mood appeared profoundly sad, and that her mood and affect were congruent and somewhat blunted (Tr. 402). He also noted her immediate memory was intact, her long term memory was good, and that she had an adequate fund of verbal information (Tr. 402). As to her concentration, Dr. Crittenden noted that although her calculation and concentration were satisfactory on other tasks, she did have some difficulty on serial sevens (Tr. 403). Regarding the claimant's judgment, he noted she appeared to be at risk for solving emergency situations

in an impulsive manner (Tr. 403). Dr. Crittenden estimated the claimant's intellectual quotient was eighty or higher (Tr. 403). He diagnosed the claimant with alcohol dependence, sustained partial remission; major depressive disorder, severe, without psychotic features; posttraumatic stress disorder, chronic; noncompliance with treatment; psychotic disorder not otherwise specified; and personality disorder not otherwise specified, mild type (Tr. 405). He indicated that the claimant's prognosis was guarded for any significant change in her psychological functioning without increased psychiatric intervention (Tr. 405).

On May 12, 2011, Kathleen Ward, Ph.D., conducted a consultative mental status examination (Tr. 419-23). She observed that the claimant began sobbing fairly early in the interview, responded with alternating sarcasm and fearfulness, appeared to be dissociated at times, and by the end of the interview was sobbing uncontrollably and experiencing a panic attack (Tr. 421). Dr. Ward estimated the claimant's intellectual abilities to be within the average range, but noted some minor deficits in social judgment and problem solving (Tr. 421-22). Dr. Ward opined that significant marijuana use may be combating the positive effects of the claimant's medications and that substance abuse treatment appeared indicated (Tr. 422). She also opined that remediation of the claimant's reported medication noncompliance may improve her prognosis (Tr. 422). Dr. Ward diagnosed the claimant with major depressive disorder, posttraumatic stress disorder, cannabis dependence, panic disorder with agoraphobia, impulse control disorder, borderline personality disorder, and dependent traits (Tr. 422).

On May 21, 2011, state reviewing physician Dr. Joy Kelley, Ph.D. completed a Psychiatric Review Technique (Tr. 435-48). Dr. Kelley found that claimant's mental impairments consisted of major depressive disorder, posttraumatic stress disorder/panic disorder, borderline personality disorder, dependent traits, THC abuse, and history of alcohol and cocaine abuse (Tr. 438-43). As a result, Dr. Kelley found that the claimant was moderately impaired in the functional category of maintaining concentration, persistence, or pace, and mildly impaired with regard to activities of daily living and maintaining social functioning (Tr. 445). In an analysis of the evidence, Dr. Kelley stated that the claimant was cognitively able to do simple work with limited public contact, that abstaining from THC and being treatment compliant would help her prognosis, and that her posttraumatic stress disorder, panic disorder, and depression would improve with treatment (Tr. 447). Dr. Kelley also completed a Mental RFC Assessment and found the claimant was markedly limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public (Tr. 449-450). In her written comments, Dr. Kelley wrote that claimant could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, could not relate to the general public, and could adapt to a work situation (Tr. 451).

At the administrative hearing, the ALJ elicited testimony from a VE to determine if there were jobs the claimant could perform with the following limitations: medium work, can perform simple tasks with routine supervision, can adapt to a routine environment, can relate to supervisors and peers on a superficial basis, and can have no

public contact (Tr. 639-40). The VE identified that the claimant could perform the job of hand packer, DICOT § 920.687-130 (Tr. 640, 753).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as the medical evidence in the record. As to Dr. Kelley's opinion, he summarized her assessment, and stated that he adopted her opinion as to the impact of the claimant's mental impairments on her functional abilities, but further limited the claimant to working in two-hour intervals with no fast-paced assembly line work to account for her moderate deficit in concentration, persistence, and pace (Tr. 606, 610-11). The ALJ determined the claimant's RFC as set forth above, and then adopted the VE's testimony that she could perform the job of hand packer (Tr. 607, 614).

The claimant argues that, despite deferring to her opinion as to the claimant's functional limitations, the ALJ nevertheless failed to properly assess Dr. Kelley's opinion. Specifically, she contends that ALJ failed to account for Dr. Kelley's finding that the claimant was markedly limited in her ability to understand, remember, and carry out detailed instructions because his RFC failed to account for the level of detail the claimant could perform. Social Security Ruling 96–6p instructs that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4 (July 2, 1996). These opinions are to be treated as medical opinions from non-examining sources. *Id.* at *2. Although the ALJ is not bound by a state agency physician's determination, he cannot ignore it and must explain the weight given to the opinion in his decision. *Id. See also Valdez v. Barnhart,* 62 Fed. Appx. 838, 841 (10th

Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it.") [unpublished opinion], *citing* 20 C.F.R. § 416.927(f)(2)(ii). Here, although the ALJ's RFC assessment found the claimant could perform simple tasks, adapt to a work environment, work for two-hour intervals, have superficial interpersonal contact to work performed, have routine supervision which was simple, direct, and concrete, but could not have contact with the general public, or engage in fast-paced assembly line work, it did not acknowledge Dr. Kelley's findings related to the claimant's ability to perform detailed work (Tr. 607). *See, e.g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

The government argues that the findings of marked limitations contained in the first section of the mental RFC assessment are merely a "worksheet" and not Dr. Kelley's ultimate opinion. *See* Social Security Administration Program Operations Manual System (POMS) DI 24510.060, *Mental Residual Functional Capacity Assessment* ("Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment. . . . Section III – Functional Capacity Assessment is for recording the mental RFC determination [and is] the actual mental RFC assessment [as] recorded."). The Commissioner thus argues that the findings of marked limitations are not necessary for

inclusion in the ultimate RFC assessment because this position has been adopted in at least one unpublished opinion by the Tenth Circuit. *See Sullivan v. Colvin*, 519 Fed. Appx. 985, 989 (10th Cir. 2013). However, the Tenth Circuit has more recently clarified that "this does not mean that an ALJ can turn a blind eye to moderate Section I limitations. . . . [I]f a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or *if it contradicts limitations marked in Section I*, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Carver v. Colvin,* 600 Fed. Appx. 616, 619 (10th Cir. 2015).

The Commissioner further asserts that the job identified at step five nevertheless accounts for any inability to understand, remember, and carry out detailed instructions. The Court, however, finds that the job identified *does not* account for those limitations with regard to the reasoning level requirements. The VE indicated that a person with the claimant's RFC could perform the job of hand packer, DICOT § 920.687-130, which has a reasoning level of 2, and which requires a worker to "[a]pply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions" [emphasis added]. The reasoning level best identifies the level of simplicity (or, conversely, complexity) associated with a job. *See Cooper v. Barnhart,* 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004) ("The reasoning level, as identified by Plaintiff, appears more similar to whether or not a claimant has a limitation to performing only simple tasks.") [citations omitted]. If a claimant is limited to simple tasks, it stands to reason that a job requiring the ability to understand and carry out detailed but uninvolved written or oral

instructions would create a conflict. *See McKinnon v. Astrue,* 2010 WL 3190621, at *5 (D. Colo. Aug. 12, 2010); *Allen v. Barnhart,* 2003 WL 22159050, at *10 (N.D. Cal. Aug. 28, 2003) (examining the requirements of the GED reasoning level of 2 and finding that "[t]he need to follow 'detailed' and 'involved' instructions exceeds the ALJ's limitation of plaintiff to 'simple, routine tasks.' Such instructions are not simple and uncomplicated, or limited to one or two steps."). "[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel,* 196 F.3d 1084, 1091 (10th Cir. 1999). *See also Krueger v. Astrue,* 337 Fed. Appx. 758, 760–762 (10th Cir. 2009) (reversing and remanding in part because the ALJ failed to resolve a conflict between VE's testimony and DOT job descriptions); *Poppa v. Astrue,* 569 F.3d 1167, 1173 (10th Cir. 2009) (noting that SSR 00–4p "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the description of that job in the [DOT]"); *Hackett v. Barnhart,* 395 F.3d 1168, 1175 (10th Cir. 2005) (applying *Haddock* to nonexertional limitations). Furthermore, "[t]he [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added].

Although the unresolved conflict as to the claimant's mental limitations would have been harmless error if other jobs had been identified that did not pose a conflict, it is not harmless here because there were no other jobs identified. *See Stokes v. Astrue,* 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding that any error on whether claimant could

perform jobs was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country.").

The claimant also argues that the hypothetical question posed to the VE did not contain all of the limitations contained in the ALJ's RFC assessment. When an ALJ relies on a VE's testimony at step five, the hypothetical question posed to the VE must "relate with precision all of a claimant's impairments." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) [quotation omitted]. If the hypothetical question posed to the VE does not include all of the ALJ's RFC limitations, the VE's testimony cannot constitute substantial evidence to support the Commissioner's decision. *Id.* Here, the RFC limited the claimant to "routine supervision, which is simple, direct, and concrete" and no "fast pace [sic] assembly line work," however, the hypothetical question included routine supervision as the only supervisory limitation and did not address the pace or type of work at all (Tr. 639-40). Although not raised by the claimant, the Court additionally notes the ALJ's hypothetical question also failed to include the RFC limitation of working in two-hour intervals (Tr. 607, 639-40). Accordingly, the ALJ's decision is not supported by substantial evidence.

For the reasons set forth above, the Court concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for proper analysis of the medical opinions of record. If such analysis results in any adjustments to the

claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 27th day of February, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**